IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NORMA R. PRINCE,

                    Plaintiff,                    OPINION & ORDER

   v.

                                                    13-cv-558-jdp

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

---

      Plaintiff Norma R. Prince seeks judicial review of a final decision of the Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Plaintiff asserts that remand is warranted because the Administrative Law Judge (ALJ): (1) failed to recuse himself from the case after plaintiff threatened to kill him at the hearing; (2) improperly discredited plaintiff's social impairment because he believed it was "volitional" and not caused by her mental impairments; and (3) failed to include plaintiff's mental limitations in the residual functional capacity (RFC) determination. The court will remand the case on grounds 2 and 3. Although this court concludes that plaintiff's threat to the ALJ does not warrant remand because plaintiff has not shown any bias on the part of the ALJ, the ALJ can revisit the recusal issue on remand.

BACKGROUND

**A.  Procedural Background**

      Plaintiff was born on March 2, 1962, in Manila, Philippines. She immigrated to the United States in 1973 with her aunt and uncle. She claims to have only a fifth grade education, but the record indicates that she graduated from high school and obtained a certified nursing assistant degree in 2000. She has worked as a certified nursing assistant, a healthcare aide, and a

production line sorter. R. 57-62, 68.[1] In addition to physical impairments, plaintiff suffers from affective disorder, anxiety disorder, bipolar disorder, borderline personality traits, and depression with psychotic features. She has attempted suicide multiple times and suffers auditory hallucinations.

On November 22, 2011, plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of September 12, 2011. Her insurance coverage will continue until December 31, 2016. The Social Security Administration denied her application initially and again on reconsideration. R. 81-109. Plaintiff requested a hearing and appeared by video before ALJ Thomas J. Sanzi on January 31, 2013. Also present at the hearing were plaintiff's non-attorney representative, Michael Casper, and Stephen H. Porter, an impartial vocational expert (VE). During the hearing, plaintiff became enraged and threatened to kill the ALJ and others. She was escorted from the building, but the ALJ continued the hearing and took testimony from the VE. Casper consented to continuing the hearing without plaintiff's presence, and he attended the entire hearing. On March 26, 2013, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled. R. 10-22.

About a month later, plaintiff was indicted by a grand jury for violating 18 U.S.C. § 115(a)(1)(B) by threatening the ALJ.[2] Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on June 10, 2013, making the ALJ's decision the final determination of the Commissioner. On August 12, 2013, plaintiff timely sought judicial review in this court under 42 U.S.C. § 405(g). She pleaded guilty to the charge of threatening a United

---

[1] The record citations are to the Administrative Record, Dkt. 10.

[2] Western District of Wisconsin Case No. 13-cr-45, Dkt. 1.

States official on December 17, 2013, and was sentenced to three years of probation on March 7, 2014.[3]

## B.  Relevant Medical Evidence

Given the court's decision to remand this case, a brief summary of the relevant medical evidence is sufficient. Plaintiff suffers from affective disorder, anxiety disorder, bipolar disorder, major depressive disorder with psychotic features, chronic post-traumatic stress disorder, impulse control disorder, borderline personality traits, paranoia, auditory hallucinations, and homicidal and suicidal ideation. R. 288-89, 317-28, 352-62, 524-34. She also struggles with memory loss, anger issues, and social isolation. She has attempted suicide multiple times. While it is not clear exactly how long plaintiff has suffered from each condition, she has struggled with mental health issues since childhood. To treat her disorders, plaintiff has been on various medications over the years.

## C.  The Administrative Hearing and Decision

On January 31, 2013, the ALJ held a video hearing with plaintiff and her representative appearing from Wausau, Wisconsin, with the VE and the ALJ in Madison. The ALJ asked the VE hypothetical questions about the capacity of a person with plaintiff's limitations to perform work in the economy. The VE testified that such a person could work as a newspaper carrier, production assembler, or housekeeper. During this part of the hearing, plaintiff became upset and threatened to shoot the ALJ and cut off his head, saying, "I'm going to go get my gun and shoot everybody. . . . Fuck you. . . . Shoot his fucking head off. . . . Cut his head off. . . . If only I had my machete with me, I'll kill him. . . . I am not afraid to die. . . . See if I don't start shooting people." R. 69-78. She also threatened to kill others in the hearing and asked the security guard

---

[3] Case No. 13-cr-45, Dkt. 30.

to shoot her. The ALJ had officers remove plaintiff from the building in Wausau, but he made the decision to continue the hearing. Plaintiff's representative expressly consented to continuing the hearing without plaintiff.

The ALJ issued a written decision, analyzing each of the five steps of the regulatory sequential analysis and concluding that plaintiff was not disabled. R. 10-22. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her onset date of September 12, 2011. R. 12. At step two, the ALJ determined that plaintiff had the severe impairments of affective disorder and anxiety disorder. *Id.* He did not find that plaintiff had a learning disorder, intellectual impairment, or physical impairments. R. 12-13. At step three, the ALJ considered two different listed mental impairments under 20 C.F.R. part 404, subpart P, appendix 1: listing 12.04, relating to affective disorders, and listing 12.06, relating to anxiety disorders. The ALJ found that plaintiff did not meet or medically equal either listing.

The ALJ determined that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations. He limited her to work involving only simple, routine, and repetitive tasks in a low stress job that required only occasional decision-making or changes and with only occasional interaction with the public or coworkers. At steps four and five, the ALJ found that with these limitations, plaintiff was unable to perform her past relevant work, but that she could perform other jobs in the economy, including newspaper carrier, assembler, or housekeeper. R. 20-21. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff argues that the ALJ erred by: (1) failing to recuse himself from plaintiff's case after she threatened to kill him at the hearing; (2) wrongly discrediting plaintiff's poor social

4

functioning by considering it volitional instead of a result of her mental impairments; and (3) failing to include all of plaintiff's mental limitations in the RFC. Because of these deficiencies and her perception that ALJ Sanzi was biased against her, plaintiff seeks remand of her case to a different ALJ. After reviewing the record, the court concludes that the ALJ improperly analyzed plaintiff's mental impairments, which were not properly reflected in the questions to the VE. These errors require remand. Although the court concludes that it was not error for the ALJ to continue the hearing and to issue the decision, the ALJ should consider recusal on remand.

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

**A. Recusal of the ALJ**

Plaintiff contends that the ALJ should have recused himself from plaintiff's case after she threatened to kill him at the hearing. Relying on *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005), plaintiff contends that her threat to kill the ALJ gave his decision at least the appearance of impropriety. She argues that the appearance of impropriety required the ALJ to recuse himself from her case. Plaintiff conflates two concepts that must be separated: the standard that ALJs must apply to recusal decisions, and the showing that a Social Security claimant must make to set aside an ALJ's decision on the ground that it is biased.

We begin with the recusal standards applicable to ALJs. The Commissioner contends that the conduct of ALJs is governed by the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX). HALLEX provides that that although an ALJ "must" recuse himself if he is prejudiced or partial; where there is only an appearance of impartiality, he "may" recuse. HALLEX, I-2-1-60. The Commissioner directs the court to decisions of three other circuits for the proposition that the "appearance of impropriety" standard is inapplicable to Social Security hearings, Dkt. 21, at 10-11 (citing *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003); *Harline v. Drug Enforcement Admin.*, 148 F.3d 1199, 1204-06 (10th Cir. 1998); and *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 167 (2d Cir. 1992)). The Commissioner asserts that the Seventh Circuit has not directly addressed the issue. But *Keith v. Barnhart* does address the issue:

> [a] fair trial in a fair tribunal is a basic requirement of due process. . . . So fundamental is this principle to the American legal system, . . . that our nation's courts have repeatedly emphasized the necessity that a decisionmaker take care to avoid even the appearance of bias.

6

473 F.3d 782, 788 (7th Cir. 2007) (citations and quotation marks omitted). The court of appeals would not have invoked the "appearance of bias" if the concept were inapplicable to Social Security cases.

But this brings us to the second concept, which concerns the showing a claimant must make to overturn an ALJ's decision because it is biased. *Keith v. Barnhart* makes clear that it is not enough to show a mere appearance of impropriety, even though an appearance of impropriety should prompt the ALJ himself to consider recusal. To secure reversal of an ALJ's decision, the claimant must show that the ALJ demonstrated profound bias:

> Our standard in determining whether an ALJ's display of bias or hostility requires setting aside his findings and conclusions and remanding the case for hearing before a new ALJ is an exacting one. . . . When reviewing the evidence, we begin with the presumption that the hearing officer is unbiased. . . . It is only after a petitioner has demonstrated that the decisionmaker "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible" that the presumption is rebutted, the findings set aside, and the matter remanded for a new hearing.

*Id*. (citations omitted).

The two concepts work together like this: the ALJ is expected to adhere to the highest level of fairness, avoiding even the appearance of impropriety. And he is presumed to have operated under this standard. But a claimant who seeks to overturn an ALJ's decision on the merits overcomes this presumption only by demonstrating deep-seated and unequivocal antagonism that would make a fair judgment impossible. That is a demanding showing that plaintiff in this case cannot make.

*Nettles*, the case on which plaintiff principally relies, is not closely analogous. The differences between that case and this one illustrate why remand is not required. (Although it is a different issue, those differences also show why the ALJ was not necessarily required to recuse himself from hearing plaintiff's case.) Nettles participated in a plot to blow up the Dirksen

7

Courthouse, where both the United States District Court for the Northern District of Illinois and the Court of Appeals for the Seventh Circuit sit. But the plot was an FBI set-up, so there was no real danger. There were no proceedings against Nettles at the time, so he could not have been motivated by a desire to prompt the recusal of the judge hearing his case. Circumstances indicated that Nettles sincerely wanted to, and was indeed prepared to, participate in the destruction of the Dirksen Courthouse. *Nettles*, 394 F.3d at 1002-03.

Nettles was charged with federal crimes and his case was assigned to Judge Bucklo of the Northern District of Illinois. Nettles moved to recuse Judge Bucklo and all the judges of the Northern District of Illinois on the grounds that there would be an appearance of bias if any of those judges, whose safety he would have threatened, presided over his case. Judge Bucklo denied the motion. On Nettle's petition for a writ of mandamus, the Seventh Circuit reversed. The court of appeals made clear that it did not think that Judge Bucklo was actually biased against Nettles. But the court held that when a criminal defendant sincerely threatens the presiding judge, it might appear to a reasonable observer that the threatened judge would have a greater incentive to rule against the defendant or to impose a longer sentence than otherwise. This appearance of bias required remand, and the court took the additional step of transferring the case to another circuit, to prevent the appearance of bias that would arise from the Seventh Circuit hearing Nettles's appeal. *Id*. at 1003.

But there are critical disanalogies with this case, beginning first with the procedural posture. Nettles sought recusal and appealed its denial before his case was heard. Plaintiff here uses the allegation of bias to secure reversal of the ALJ's decision on the merits. As explained above, the standards applicable to these two situations are different.

Second, there is a potential waiver in plaintiff's case. Her representative did not object to the continuation of the hearing after plaintiff was removed, and she did not object to the ALJ

8

making the decision. A party who suspects bias on the part of the decisionmaker cannot sit back and wait to see how things turn out before voicing her concern over the integrity of the process. *See United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976) ("The law is well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification.").

Third, the appearance of bias in plaintiff's case is minimal. The sincerity of plaintiff's threat is questionable. Before the outburst that lead to her removal, plaintiff testified that she had lost several jobs because she fought with her coworkers, and she said "I like to kill the people that I work with. Cut their head off." R. 62. Plaintiff's verbal aggression was not directed specifically at the ALJ, it was directed to many people that she had to interact with. Although there is evidence in the record that plaintiff had weapons at her home, there is no evidence that she had ever used them for any illegitimate purpose.

Plaintiff is correct that the ALJ took her threat seriously, in that he had her removed from the Wausau hearing room and apparently referred the matter for criminal prosecution. But given that plaintiff was more than 100 miles away in Wausau, a reasonable observer would not conclude that the ALJ was actually at personal risk so that he might not be fair to plaintiff in his subsequent decision. Even if he were personally at risk, it is not clear how that would bias the ALJ. As pointed out in *Nettles*, a judge who is personally threatened by a criminal defendant arguably has an increased incentive to make sure the defendant is incarcerated for as long as possible. But an ALJ in a Social Security case does not have that incentive because he cannot incapacitate the claimant by his decision. Maybe a threatened ALJ would be inclined to retaliate against the claimant, but it would be just as reasonable to infer that the ALJ would have an incentive to alleviate his personal risk by giving the claimant what she wants.

The court sees no error in the ALJ's decision to complete the hearing and render a decision in this case, particularly because plaintiff did not ask him to do otherwise. An ALJ would be understandably reluctant to recuse himself when a claimant abruptly threatens him in the middle of a hearing. A rule requiring automatic recusal under such circumstances would invite abuse, because a claimant would be tempted to use such a threat whenever the hearing evidence turns against her, which appeared to be a contributing factor to plaintiff's agitation at the hearing.

On remand, if this case is reassigned to ALJ Sanzi, he should consider whether remand is appropriate because of an appearance of impropriety to a reasonable observer. But at this point, plaintiff cannot make the showing required under *Keith v. Barnhart* that the ALJ demonstrated deep-seated and unequivocal antagonism that would make a fair judgment impossible.

**B. Plaintiff's poor social functioning**

Plaintiff argues that the ALJ wrongly attributed her poor social functioning to volition instead of attributing it to her mental impairments. In other words, according to the ALJ, plaintiff chose when to exhibit appropriate and inappropriate behavior.

To support his conclusion that plaintiff's poor social functioning was volitional, the ALJ relied on the Diagnostic and Statistical Manual of Mental Disorders, IV (DSM IV), a medical text published by the American Psychiatric Association that was not included in the record. In his decision, the ALJ quoted text from the manual, suggesting that individuals with mental impairments maintain a degree of control over the behaviors associated with their disorder. Although ALJs are allowed to cite to medical texts for the limited purpose of defining technical terms, *Allen v. Sullivan*, 977 F.2d 385, 390 (7th Cir. 1992), plaintiff alleges that he did more than that, using the DSM IV for substantive evidence. *See also Gill v. Shalala*, 94-cv-2299, 1994 WL 649989, *4 (N.D. Ill. Nov. 16, 1994) ("Although [plaintiff] asserts that a medical reference

source, the Physicians' Desk Reference, substantiates the side effects to which she claims, the use of a medical reference source may not be used as substantive proof of a disability."). Where an ALJ finds it necessary to refer to a medical text, he must first submit the text to plaintiff for review and comment, making the text part of the record. *Baker v. Barnhart*, 02-cv-3195, 2003 WL 22715829, *2 (N.D. Ill. Nov. 17, 2003). The ALJ did not submit the DSM IV to plaintiff's review or enter it into the record. Accordingly, plaintiff argues that the ALJ improperly used the text as substantive evidence, with which to play doctor and conclude that plaintiff maintained control over her inappropriate social behaviors. The court agrees.

According to HALLEX, "the ALJ must not cite medical texts and medical publications as the authority for resolving any issue. If it is necessary to refer to a medical text or medical publication, the ALJ must submit the material to the claimant or the representative for review and comment, and make the material a part of the record." HALLEX, I-2-8-25(D); 4 Soc. Sec. Law & Prac. § 53:13. In his decision, the ALJ used the medical text for more than defining technical terms and failed to submit it to plaintiff for review and comment. Instead, the ALJ relied on the text to determine "whether [plaintiff's] symptoms are volitional or a personal choice as opposed to an impairment or illness imposed limitations that are not within her control." R. 16-17. In concluding that plaintiff's instances of inappropriate behavior were within her control, the ALJ relied on the text, quoting that a "diagnosis in itself does not demonstrate that a particular individual is (or was) unable to control his or her own behavior at a particular time." R. 17.

To further support his conclusion that plaintiff could control her behavior, the ALJ pointed to reports in the record that described instances in which plaintiff appeared cooperative and able to make good eye contact with her treatment providers. *Id.* He noted that plaintiff was able to maintain a marriage and a friendship, as well as sustain employment for a period of time,

11

despite her mental impairments. *Id.* He did not explain how occasional examples of appropriate behavior and the ability to maintain a marriage (which has since failed) and one friendship undermined the importance of plaintiff's diagnosed mental impairments and the limitations they impose upon her. On remand, if the ALJ chooses to rely on medical texts as substantive evidence, he must first enter it into the record for review and discussion. Alternatively, the ALJ may forgo consulting the DSM IV himself and instead rely on the medical opinions of plaintiff's doctors and the evidence in her medical records.

**C. Plaintiff's mental impairments in the RFC**

Plaintiff alleges that the ALJ failed to incorporate all of her mental impairments in the RFC, and limited plaintiff to work involving only simple, routine, and repetitive tasks in a low stress job, defined as having only occasional decision-making or changes and only occasional interaction with the public or coworkers. R. 15. Plaintiff claims that the RFC should have also included limitations relating to: remembering work locations or work procedures; maintaining attention and concentration for extended periods; performing activities within a schedule; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; accepting instruction and responding appropriately to criticism; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, "even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see also Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014), *as amended* (Aug. 20, 2014) ("An RFC determination must account for all impairments, even those that are not severe in isolation.") (citation omitted). According to Social Security Ruling 85-15:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

The ALJ examined evidence of plaintiff's capacity to engage in these work-related activities in another part of his decision. In the section where the ALJ analyzed whether plaintiff's impairments met or medically equaled a listed impairment, he found that plaintiff had moderate difficulties in daily living, social function, and concentration, persistence, or pace (CPP). R. 14. Despite finding these difficulties, the ALJ did not specifically account for them in the RFC. The ALJ's boilerplate language, limiting plaintiff to "only simple, routine, and repetitive tasks in a low stress job" with only occasional interaction with others does not fully account for her social and CPP difficulties. On remand, the ALJ should incorporate all of plaintiff's impairments in the RFC. Vague, boilerplate language will not suffice.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Norma R. Prince's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered January 29, 2015.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

13